Good morning, my name is Jonathan Kaufman and I represent the petitioner Avinash Kaur who is present here in court today. This is an immigration case that arises in a removal proceeding. And initially I'd like to address the motion to terminate that the petitioner made at her hearing with the immigration judge. 8 U.S.C. 1229 requires that in a removal proceeding an alien be served with a notice to appear form that advises her of her rights and obligations in a removal proceeding. The attorney general cited that statute and promulgated a regulation 8 CFR 239.1a that delegates his authority to issue a notice to appear to a specific and limited group of immigration officers. Petitioner contends that because a limited group of officers have the attorney general's discretion to issue a notice to appear form, that the identity of the immigration officer is a jurisdictional fact that the Department of Homeland Security must prove at a removal hearing to satisfy its burden of proving the immigration court's jurisdiction. And that a notice to appear that was issued by an immigration officer who was not identified in that regulation would be invalid and could not initiate a valid removal proceeding. Why wasn't it legitimate to take administrative notice that this is a common acronym? And, in fact, the government in its argument even identified, you know, this gentleman, Clifford Gade, as the supervisory asylum officer, so there was notice about that. Well. I mean, it seems to me to be not your strongest argument and highly hyper-technical when the immigration judge has years of experience. It would be like saying GAO or FAA, SAO. I'm kind of hard-pressed to understand the argument. Well, whether the purpose and the reason that the text SAO appears on the notice to appear is not an adjudicative fact that an immigration judge can take notice of. You know, in an asylum case, an immigration judge can take notice of the existence of a political party, can take notice of the date that a public election occurred. But the reason that a notice to appear has SAO is subject to a dispute because SAO is also a surname. So it could have been the name of the officer. When did you first raise the argument that this was a surname? At the removal hearing in the motion to terminate that was made to the immigration judge. And in response, the government filed opposition. And in the body of that opposition, they asserted that the notice to appear was issued by a supervisory asylum officer, but didn't present any evidence of that fact. It's just argument contained in pleading. And ultimately, the immigration judge. It just seems you have to give some credit to the judge in reviewing documents. And you've got a signature there, and then in small caps, SAO, that in no way appears to be a surname. And you have an officer there of somebody who is such a person. Well, but the immigration judge didn't cite the factual assertion made in the pleading as the reason for his factual finding that it was a supervisory asylum officer that issued the notice to appear. He based his findings solely on administrative notice. And as far as whether that is a recognized acronym, the agency, in fact, publishes its acronyms on its website, and SAO is not an official agency acronym. So what you have as far as evidence, you have a lack of an official acronym. You have a text that could be a title or it could be a surname. And you have the Department of Homeland Security that has the burden of proof, and the agency didn't really make any effort to meet its burden of proof. And in this vacuum of evidence, the immigration judge stepped forward and took administrative notice. So I really think it comes down to the fact that the agency is not an official agency.  notice. And if you were to take it and hand it to your client and start the process all over? That would be one thing they could have done. They have the burden of proving that the notice to appear was issued in compliance with the regulation. And the Respondent, in defending this decision here, brings up arguments that the immigration judge didn't cite at all. The Respondent argues that the title isn't necessary to validate the notice to appear. They argue that the notice to appear is entitled to a presumption of regularity. But neither of those factors were cited by the immigration judge. They argue that the Petitioner didn't prove that she was prejudiced by the lack of a title. But again, that wasn't argued by the government at the removal hearing, and prejudice is not even required in order to maintain a jurisdictional challenge. The Petitioner would submit that it's a question of burden of proof. If the Court determines that the title is necessary, then there's a question of whether or not the government met its burden of proof given the ambiguous evidence. If, in fact, SAO was a recognized acronym, if they published it somewhere to say that this is the an acronym for this officer's title, then the Petitioner would concede that they met their burden of proof. But that's not the case here. There's another issue that arises because of the notice to appear with regards to the Petitioner's application for cancellation of removal. The immigration judge found that the service of the notice to appear stopped time and that she didn't have the 10 years before service. But if, in fact, the notice to appear wasn't completed and it wasn't in conformance with the Attorney General's requirements for a notice to appear form, then the service would not stop time under HCFR-1229B-D1. Finally, there's the issues of her asylum application, which turn on credibility. And it turns on the fairness of the opportunity given to the Respondent to defend her credibility at the hearing. The immigration judge noted many different factors, the majority of which are not legitimate reasons to find the Petitioner not credible. For instance, he took issue with her description of the medical treatment that she received in India, and that was just his speculation what an Indian doctor would do and confront it with a patient with her complaints. He took issue with her personal decisions and her decision to marry. And these are not legitimate reasons to find an asylum applicant not credible. He took issue with the fact that she claimed that a police officer dared her to join the terrorists. And as she explains in her opening brief, there's explanations why a police officer could make such a taunt, and the immigration judge didn't consider that. The immigration judge found a factual discrepancy where there was none. He said that she, that the Petitioner had testified at an asylum interview, that she had never seen her father after he was arrested by the police, and that at the hearing she said that she, her father was held in a separate room at the police station. But there's no conflict there. That's consistent testimony. The nub of the case, it appears to Petitioner, is that there are alleged conflicts in her description of her party membership that occurred at the asylum office interview and at the removal hearing. But the only record of the asylum office interview was a, were notes, which aren't entirely legible, and a tape of the interview that was admitted by the immigration judge at the removal hearing. The problem with the judge's decision to admit that tape was that the, the removal hearing statute, 1229a, requires that a complete record of the testimony received at a removal hearing be maintained in the record of proceeding. There's a partial record of that tape which was made by the prosecutor representing the government at the hearing. Would you want to save the rest of your time for rebuttals? All right. Thank you. May it please the Court. Noroskele Schwarz for Respondent Gonzales. Once again, I'm going to show my age. Where's the beef? On the issue of the notice to appear, she was handed the notice to appear. She signed for it. She knew what she was being charged with and what she needed to defend from the day she was handed the notice to appear in 1997. Where is the prejudice? Your process doesn't exist in a vacuum. You need to show that you were prejudiced by any alleged violation. A, there's no violation. B, there's no prejudice. Two, the credibility issues are significant in this case. Before you go to the credibility issues, let me ask you something. If this case were remanded, would it wind up with the same law judge? Or would it go to someone else? Probably not. Random? It's generally random. And there's so much going on now with immigration judges. We're trying so hard to clean up our act. And I don't remember who the judge was in this case, but it's unlikely. And I think we could certainly request it. But remand isn't required here. This whole ---- This judge was Mr. DeCostanza, who's here in the California region. And still, I don't think any complaints have been filed against him. But what we have here, this is for purpose of delay. It's a bogus argument so that we can now start all over again and start with a cancellation application, because asylum is not going to work. She told, you know, seven years later, when she's been in the country and has had a chance to develop the argument, all of a sudden she's speaking at 10 or 15 demonstrations to thousands of people at a time. She told the asylum officer she never spoke. She only attended five or six. And that most she went door to door. Her secretarial functions consisted of, you know, administrative tasks in the office and filling out forms on a door-to-door basis. And the issue, the other issue was, was she appointed secretary the day after she showed up to do secretarial functions or was she appointed secretary after she'd proven her dedication to the cause after six months? And these are material because they go to the heart of the claim. If she's a known speaker speaking to thousands and thousands of people 10 or 15 times, that might mean that she was a known person and would be targeted. But she hasn't established that because you have two completely inconsistent stories, and either one, the evidence cannot compel that the one she wants you to believe is the true one, because the evidence, substantial evidence in the form of her own testimony supports either. Moreover, there's, again, when we have a credibility issue, corroboration is helpful. There isn't any. She hasn't even provided a membership card in the Federation, even though she says she and her mother went to the Federation and said, I'm being punished because of my activities with you, you owe me, and they provided her with the means to come to the United States. The record does not support that. As far as what we have, the challenge to the use of the immigration officer's notes in the hearing, counsel had six weeks to review the tape and to review the transcript to present. But that was a question I had. Maybe you can clear up. As I understood it, they served a subpoena request at the outset of the hearing. The immigration judge said, well, we don't know if this is going to be relevant, so if it is, then I'll deal with it at that point. But, in fact, they cross-examined her on the basis of these notes, which she had not or really, in effect, the transcription of the interview, the asylum interview, which she had not yet had access to. So isn't her argument that before she testified, she should have had access to either this partial transcription or the tape itself? Well, again, that's an interesting point. But as you said, the immigration judge said, we'll deal with it if it becomes important. It became important. And that's when they dealt with it. Six weeks was sufficient to get someone to listen and get another person to see. That would have mattered if she had said, I didn't mean that or something, but what she said was it was an incorrect translation. He had six weeks. She had six weeks to hire a translator and file and prepare. So let me just get this. Because I thought her argument was, in part, if I had it in advance, then I would know what it said. But since I didn't have it, I had to testify without the benefit of it. And looking at it afterwards doesn't help. Except, Your Honor, come on. This is her asylum claim. I mean, did she speak to 10,000 people, you know, more than 1,000 people at 10 or 15 demonstrations? Or was she just doing administrative work in an office? She doesn't need a tape to tell her what the truth was. I know it's not what she testified to. I know it's not like the Jenks Act, you know, in Federal criminal prosecution. But is there also a rule within the immigration proceedings that you're not entitled to impeachment testimony? I believe you're not entitled to impeachment testimony in any kind of trial, are you? I do mostly immigration work. No, I'm asking about a specific immigration case. No. The judge went over and above in this case to give Petitioner six weeks to get her story straight and consistent with the asylum officers. And again, you know, she didn't need her recollection refreshed. She had one story. Well, actually, she had two stories, but she's only supposed to have one. The asylum officer hears, you know, at least one a day. So he needs his notes. But she doesn't. I mean, she's claiming asylum based on her fear of persecution, based on either I was a secretary at an office and I filled out forms, or I spoke 10 or 15 times to thousands of people each time. That's not, you know, that's clearly an enhanced claim. And credibility is not warranted here. She's come to the United States. She was married within a month of arriving here. She has a family now. She's looking for cancellation. There is no error in the immigration judge's decision. The adverse credibility stands, and there is no prejudice resulting from any charge relating to the notice to appear. Any further questions? So thank you. I've been practicing immigration law at the Immigration Court here in San Francisco for 24 years. If this case is remanded back, it's going to go back to the same immigration judge. They aren't just assigned at random. It will go back to the immigration judge who heard the case the first time. As far as corroboration, the immigration judge didn't ask for any corroboration. This was just not an issue at the hearing, so the government bringing up the lack of corroboration now is irrelevant. The fact that the petitioner had six weeks to prepare sort of begs the issue. The immigration judge listened to the tape of the asylum interview outside of the immigration courtroom. Who knows what he listened to, if he understood it. He said that 10 percent of the tape was inaudible. I don't understand that argument. It's like if you have an exhibit, it doesn't mean the judge has to read it in the courtroom. Well, but he has to make it the testimony that he has considered has to be made a matter of record under the statute. And wasn't the tape part of the record? The tape was, but a transcript of the tape was not. And it was the duty of the immigration judge, if he was going to admit that into evidence, to make that transcript, because it's the immigration court's obligation under the regulations to maintain a complete record of all the testimony received. I don't understand. There's a tape that's an exhibit, and then the government offered a partial transcript. Is that correct? Yes. And was that of the portions that they wanted to use? Apparently. What happened was they went to a hearing on a particular date, and they asked for an extension of time. And they offered that partial transcript as to support their motion for a continuance, because the judge was going to make a decision on that date. And then the judge, based on those representations, continued the case for six weeks. But to say that the petitioner could have made a transcript herself of the tape and submitted that transcript into the court record is – would be erroneous, because she doesn't have that authority. It's the judge's – the immigration court's duty to maintain the testimony that the immigration judge has considered. And the immigration judge didn't do that in this case. He – all the court has to review his factual findings, his credibility findings, is a photocopy of an envelope which presumably contains the tape. And we don't know at all, really, what that – what was said at that interview. And finally – Wait. Have you listened to the tape? You had the opportunity to listen to the tape, you and your client. A copy of the tape was – was given to – to the petitioner. Okay. I think your time is up. If you have one more comment, we will interrupt you. As far as the notice to appear, whether it was properly served, whether the notice to appear form had all the – satisfied all the notice requirements of 229 I think is irrelevant, because the – even a notice to appear form that satisfied all the notice requirements would still be invalid if it was not issued by an immigration officer who had been delegated the Attorney General's authority to – to issue a notice to appear. Thank you. Thanks to both counsel. And we'll now submit the case of Korr v. Gonzales. The next case for argument is Patel v. Del Taco, Inc. Thank you.
judges: Alarcon, McKeown, Holland